# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 1:10CR00026-2 |
| v. | ) | **OPINION** |
| **TERRANCE K. CUNNINGHAM,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Terrance K. Cunningham, Pro Se Defendant.*

The defendant, Terrance K. Cunningham, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. Cunningham alleges claims of ineffective assistance of counsel, prosecutorial misconduct, and court error. This matter is before me upon the United States' Motion to Dismiss, and Cunningham has responded, making the matter ripe for disposition. After carefully reviewing the record, I will grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence.

I.

On December 7, 2010, Cunningam and two codefendants, Ronald W. Smith, Jr., and Angela Smith, were charged in a 242-count Superseding Indictment. All defendants were charged with: (1) conspiracy to commit wire fraud by creating and

executing a Ponzi scheme,[1] in violation of 18 U.S.C. § 1349 (count 1); (2) wire fraud, in violation of 18 U.S.C. §§ 2 and 1343 (counts 2-215); (3) money laundering, in violation of 18 U.S.C. §§ 2 and 1957 (counts 224-240); and (4) commodities fraud, in violation of 18 U.S.C. §§ 7(b)(a)(2)(A)-(C), 13a-1, and 13a-2 (count 241). Cunningham was also charged with count 242: intimidating a witness, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(b)(2)(A).[2]

Cunningham and Angela Smith pleaded not guilty and proceeded to a jury trial on all counts.[3] Ronald Smith, Jr., pleaded guilty without a plea agreement to all counts. The jury found Cunningham and Angela Smith guilty on all counts. (Jury Verdict 1-28, ECF Nos. 192, 193.)

The evidence at trial was that Cunningham and his codefendants participated in a Ponzi scheme involving a so-called Safeguard 30/30 Investment Club ("Safeguard 30/30") that offered impossibly high returns. Investors were

---

[1] *See United States v. Loayza,* 107 F.3d 257, 259 n. 1 (4th Cir. 1997) (defining a Ponzi scheme as one in which "early investors are paid off with money received from later investors in order to prevent discovery and to encourage additional and larger investments.")

[2] Codefendants Ronald Smith, Jr., and Angela Smith were charged with six additional counts of money laundering, in violation of 18 U.S.C. §§ 2 and 1957 (counts 218-223). Ronald Smith, Jr., was also charged with two counts of making and using materially false writings in a matter within the jurisdiction of the executive branch, in violation of 18 U.S.C. §1001(a)(3) (counts 216 and 217).

[3] Prior to trial, wire fraud counts 81 and 154 were dismissed upon the motion of the United States. During the trial, wire fraud counts 159 and 212 were dismissed upon the motion of the United States.

falsely told that the returns were generated through trades on the foreign money exchange market using a sophisticated computer program. Throughout 2009, defendants recruited investors and collected deposits. However, no trades were ever actually made. (Trial Tr. 111, Aug. 1, 2011, ECF No. 283.)

At first, some investors received payouts taken from the deposits of later investors; however, by the latter half of 2009, payments had drastically slowed or stopped. (Trial Tr. 25, 34, July 27, 2011, ECF No. 275; Trial Tr. 20-22, 106-07, July 28, 2011, ECF No. 276.) On February 23, 2010, the Commodity Futures Trading Commission ("CFTC") filed a civil lawsuit and froze Safeguard 30/30's bank account.[4] The Ponzi scheme resulted in over $1,446,249 being deposited into Safeguard 30/30's bank account. (Presentence Investigation Report ("PSR") 7, ECF No. 362.) However, when the CFTC froze the account, only $2,690.84 remained. (Trial Tr. 96, Aug. 1, 2011, ECF No. 283.) Cunningham received $215,146, Ronald and Angela Smith received $411,480.13, and investors had received returns of $474,674.16. (*Id.* at 97-110, 138; PSR 7, ECF No. 362.)

---

[4] On December 29, 2008, Angela Smith had opened a bank account in the name of Tigre Systems, Inc., over which she had sole signatory authority. (Trial Tr. 86-87, 116, Aug. 1, 2011, ECF No. 283.) Investors were falsely informed that Tigre Systems was an independent auditing company that monitored the investments and handled the funds. (Trial Tr. 33-34, 45, July 27, 2011, ECF No. 275.) Throughout 2009 and early 2010, the bank account was used for deposits into and transfers out of Safeguard 30/30. (Trial Tr. 86-88, Aug. 1, 2011, ECF No. 283.)

At trial, Cunningham claimed he was merely an investor in the Ponzi scheme and had no knowledge of any wrongdoing on the part of the other defendants. He asserted he had invested $5,000 and that was why he had received the $215,146 from Safeguard 30/30's bank account. (Trial Tr. 183-84, Aug. 1, 2011, ECF No. 283.) Eight investors recruited by Cunningham testified against him at trial.

I sentenced Cunningham to 84 months' imprisonment.[5] I sentenced Ronald Smith, Jr., to 135 months imprisonment, and Angela Smith to 36 months imprisonment. Cunningham appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed his convictions and sentence.[6] *United States v. Smith*, 526 F. App'x 256 (4th Cir. 2013) (unpublished). Thereafter, Cunningham filed a petition for a writ of certiorari, which was denied on October 15, 2013. *Cunningham v. United States*, 134 S. Ct. 452 (2013).

In this § 2255 motion, Cunningham alleges ineffective assistance of counsel and prosecutorial misconduct on multiple grounds. Cunningham also alleges a violation of *Apprendi v. New Jersey,* 530 U.S. 466 (2000), in the calculation of his sentence. I find that Cunningham's motion to vacate fails and will be dismissed.

---

[5] The PSR calculated a total offense level of 32 and a criminal history category of 1, resulting in a guideline range of imprisonment of 121 to 151 months. (PSR 16-17, ECF No. 362.)

[6] Cunningham challenged the sufficiency of the evidence supporting his wire fraud, money laundering, and witness tampering convictions. *United States v. Smith*, 526 F. App'x at 259. He also challenged his sentence, alleging that the district court erred in applying loss, victim number, and sophisticated means enhancements. *Id.*

II.

A. Allegations of Ineffective Assistance of Counsel.

To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).[7] The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Id*. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Cunningham claims counsel provided ineffective assistance by failing to (1) call codefendant Ronald Smith, Jr. to testify as a witness at trial; (2) challenge the

---

[7] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. *Id.* at 697.

-5-

money laundering charges; and (3) move for a mistrial after government witness Sam Jones committed perjury during direct examination.

(1) Failure to Call Witness.

Cunningham claims counsel was ineffective for failing to call codefendant Ronald Smith, Jr., to testify at trial. Cunningham asserts, without support, that Smith's testimony would have "place[d] the burden of this criminal conduct squarely on the shoulders of Smith." (Mot. to Vacate Ex. A, 1, ECF No. 421.) Because Smith pleaded guilty to all counts against him, Cunningham wrongly assumes that Smith would have testified that the "criminal scheme and enterprise . . . was designed, implemented, and orchestrated" by Smith alone. (*Id.*) However, Cunningham provides no evidence that Smith's testimony would have been exculpatory, or even benefitted him, and his argument has no support in the record.

Additionally, Cunningham has not established that Smith was even willing to testify at trial. Smith pleaded guilty prior to Cunningham's trial. However, at the time of trial, Smith had not yet been sentenced or concluded his appeal, and thus he retained his Fifth Amendment right against self-incrimination. *See Mitchell v. United States*, 526 U.S. 314, 329-30 (1999) (guilty plea does not extinguish Fifth Amendment right against self-incrimination); *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004) (Fifth Amendment right against self-incrimination exists until appeal is final).

Further, "the decision whether to call a defense witness is a strategic decision, demanding the assessment and balancing of perceived benefits against perceived risks," and a habeas court must give great deference to such decisions. *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (internal quotation marks and citation omitted) (rejecting claim that counsel was ineffective for failing to call three jail house witnesses who might have provided exculpatory evidence); *see Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977) (noting counsel's failure to call witnesses is a tactical decision which courts are reluctant to second guess). Cunningham has failed to show either that Ronald Smith, Jr. was willing to testify and would have provided exculpatory information, or that counsel's tactical decision not to call Ronald Smith, Jr., constituted deficient performance. *See Strickland,* 466 U.S. at 689. Accordingly, Cunningham has not shown ineffective assistance of counsel under *Strickland,* and this claim will be dismissed.

(2) Money Laundering Charges.

Cunningham claims that counsel provided ineffective assistance by failing to challenge the money laundering charges on the basis that Cunningham had no control over the money invested in Safeguard 30/30. Cunningham states he "was convicted for transactions initiated, processed, implemented and completed by [Ronald] Smith." (Mot. to Vacate Ex. A, 2, ECF No. 421.)

This argument fails because a conspirator may be convicted of an offense committed by a coconspirator if the offense was committed during the course and in furtherance of the conspiracy. *See United States v. Chorman*, 910 F.2d 102, 110-11 (4th Cir. 1990) (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)); *see also United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006) ("In a conspiracy case . . . 'proof of acts by one co-conspirator can be attributed to all members of the conspiracy.'" (quoting *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995))). Accordingly, Cunningham has not shown that counsel was ineffective for failing to challenge the money laundering charges. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (noting that the Sixth Amendment does not require counsel to raise a meritless argument).

Cunningham also claims that counsel should have challenged the money laundering charges under *United States v. Santos*, 553 U.S. 507 (2008), which he asserts held that criminal money laundering is "profits not receipts." (Mot. to Vacate Ex A, 2, ECF No. 421.)[8] In *Santos*, the Supreme Court held that where a defendant was convicted of both running an illegal gambling operation, and of

---

[8] Congress amended the money laundering statute in May 2009, defining proceeds to include "gross receipts," with such amendment "effectively overrul[ing] *Santos*." *See United States v. Simmons*, 737 F.3d 319, 324 (4th Cir. 2013). However, because the amendment was not in effect at the time of at least a portion of Cunningham's conduct, I will consider this claim based on *Santos*. *See id.*

illegally laundering the proceeds of that operation by paying money out to the winners, the money laundering conviction merged into the illegal gambling operation conviction. *Santos,* 553 U.S. at 517. Subsequently, in *United States v. Simmons*, the Fourth Circuit held that where the government charged a defendant with wire fraud for operating a Ponzi scheme and with money laundering for making payments to investors in the Ponzi scheme, the conviction for money laundering merged with the conviction for wire fraud because the payments to investors constituted "essential expenses" for carrying out the Ponzi scheme. 737 F.3d 319, 328-329 (4th Cir. 2013) ("Simmons's payments to investors, like Santos's payments to lottery winners, constitute essential expenses of his underlying fraud.").

The United States argues that the money laundering charges in this case "all stem from wire transfers of money directly to Cunningham or to individuals involved in schemes unrelated to Safeguard 30/30. Because . . . none of the money laundering offenses were part of the actual Ponzi scheme, they were not payments of expenses to run the scheme and there was no *Santos* error." (Mot. to Dismiss 28-29, ECF No. 428 (citations omitted).) Cunningham does not contest this statement, nor does he specify why the holding in *Santos* applied to any of the specific money laundering charges contained in counts 224-240. Accordingly, he has not shown that a challenge by counsel to the money laundering charges under

*Santos* would have been successful. Accordingly, Cunningham has failed to show ineffective assistance under *Strickland,* and this claim will be dismissed.

### (3) Alleged False Testimony by Government Witness.

Cunningham alleges that government witness Sam Jones made false statements during his direct examination and that counsel should have had the witness disqualified "and moved for a mistrial." (Mot. to Vacate Ex. A, 3, ECF No. 421.) However, Cunningham fails to identify Jones' allegedly false statements or provide a citation to the trial transcript. Cunningham also fails to specify how Jones' testimony harmed his case. While pro se pleadings are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), a court may not construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). Conclusory allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992). Further, I have reviewed Jones' testimony during direct examination and found nothing to suggest that counsel was ineffective for failing to discredit the witness or move for a mistrial. Accordingly, this claim will be dismissed.

B. Prosecutorial Misconduct.

Cunningham alleges prosecutorial misconduct related to a violation of *Brady v. Maryland,* 373 U.S. 83 (1963). Cunningham also alleges prosecutorial misconduct regarding the evidence presented in support of the wire fraud and money laundering charges. Finally, Cunningham claims that the government used the Superseding Indictment to prejudice him in the eyes of the jury.

(1) Alleged *Brady* Violation.

Cunningham claims that the United States violated *Brady* by failing to disclose that Ronald Smith, Jr. had admitted his guilt and pleaded guilty to all charges. Cunningham argues this information was exculpatory because it showed that "Smith committed his fraud all [b]y himself." (Mot. to Vacate Ex. B, 1, ECF No. 421.) The Due Process Clause requires a prosecutor to disclose to criminal defendants favorable evidence in the government's possession that is material either to guilt or punishment. *United States v. Agurs*, 427 U.S. 97, 109 (1976); *Brady*, 373 U.S. at 87. "To make out a *Brady* violation [Cunningham] is obliged to show that the undisclosed evidence 'creates a reasonable doubt that did not otherwise exist' as to his guilt." *United States v. Alexander*, 789 F.2d 1046, 1049-50 (4th Cir. 1986) (quoting *Agurs*, 427 U.S. at 112); *see also United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) (The petitioner has the burden of proving that the evidence is favorable to the accused, either because it is

exculpatory, or because it is impeaching, and that the evidence was material to the defense.). Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Evidence is material "when 'its suppression undermines confidence in the outcome of the trial'" such that the result of the proceeding would have been different. *United States v. Kelly*, 35 F.3d 929, 936 (4th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Cunningham fails to meet his burden under *Brady* to show that Ronald Smith, Jr.'s admission of guilt was exculpatory and material to his defense. Moreover, Cunningham does not dispute both that Smith's guilty plea was a public event and that Cunningham and his counsel received notice of the guilty plea via the courts electronic case filing system. (Mot. to Dismiss 29, ECF No. 428.) "In situations . . . where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. Va. 1990). Accordingly,

Cunningham fails to show a violation under *Brady,* and this claim will be dismissed.[9]

(2) Alleged Misrepresentation of the Evidence by the Government.

Cunningham next asserts that the government misrepresented the evidence against him at trial. Cunningham objects to the way the government tried its case, stating, "The government used a narrative, an association with [Ronald] Smith, and the payment of investment returns as evidence of . . . criminal conduct in a manner specifically designed to create and display bias and prejudice . . . ." (Mot. to Vacate Ex. C, 1, ECF. 421.) Basically, Cunningham argues that it was prosecutorial misconduct to present the case against him to the jury because he was not guilty of the conduct alleged. However, Cunningham challenged the sufficiency of the evidence against him on appeal, and his convictions were affirmed by the court of appeals, which held that substantial evidence supported his convictions. *Smith*, 526 F. App'x at 259. Defendants are not "allowed to recast, under the guise of collateral attack, questions fully considered by [the] court" on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, this claim will be dismissed.

---

[9] To the extent that Cunningham claims the government violated *Brady* by failing to present evidence of Smith's guilty plea to the jury, this argument fails. *Brady* does not dictate what evidence the government should present to a jury but rather bears on what evidence must be disclosed to defense counsel. *Brady*, 373 U.S. at 87.

(3) Superseding Indictment.

Cunningham alleges that the government committed prosecutorial misconduct by indicting Cunningham for "financial transactions that were completely controlled by Smith . . . ." (Mot. to Vacate Ex. D, ECF No. 421.) Cunningham concludes that this was an attempt to use the Superseding Indictment to prejudice Cunningham, and "create a perception or appearance of criminal conduct . . . ." (*Id.*) Cunningham has stated no basis on which to find prosecutorial misconduct regarding the Superseding Indictment. It is a crime to conspire to commit the offenses charged in the Superseding Indictment and under 18 U.S.C. § 2(a), a person shall be "punishable as a principal" if he or she aids or abets in the commission of an offense. The evidence established that Cunningham conspired to, and aided and abetted, the development and execution of a Ponzi scheme, the jury convicted Cunningham on all counts, and the court of appeals held that substantial evidence supported Cunningham's convictions. *Smith*, 526 F. App'x at 259. Accordingly, this claim will be dismissed.

C. Actual Innocence of Commodities Fraud.

Cunningham claims he was actually innocent of commodities fraud because he "had no involvement with commodities trading and no involvement in the alleged computer model that was designed to guarantee unrealistic commodity

-14-

Case 1:10-cr-00026-JPJ   Document 431   Filed 11/02/15   Page 14 of 17   Pageid#: 6679

trading profits."[10] (Mot. to Vacate Ex. E, ECF No. 421.) However, as stated above, the court of appeals held that substantial evidence supported Cunningham's convictions, and Cunningham has presented no new evidence in support of his claim of actual innocence. *Smith*, 526 F. App'x at 259. Accordingly, Cunningham has not shown that he was actually innocent of his conviction for commodities fraud, and this claim will be dismissed.

### D. *Apprendi*.

Cunningham claims his sentence was imposed in violation of *Apprendi v. New Jersey,* 530 U.S. 466 (2000), because the court made factual findings regarding investor losses, the use of sophisticated means, and the number of investors, in accordance with United States Sentencing Guidelines ("USSG") § 2B1.1. This claim was not raised on appeal and, therefore, is not subject to review. Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice or demonstrates actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Attorney error can serve as cause for default, but only if it amounts to a violation of the defendant's

---

[10] Whether a freestanding claim of actual innocence is even cognizable in a habeas action unaccompanied by assertion of an independent constitutional violation remains unsettled in the Fourth Circuit. *See Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999).

constitutional right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Cunningham has not shown cause and prejudice or actual innocence. Moreover, there has been no *Apprendi* error. In *United States v. Booker,* 543 U.S. 220, 245 (2005), the Supreme Court made the Guidelines advisory, striking down the portion of 18 U.S.C. § 3742 that had made the Guidelines mandatory. Because the Guidelines are not mandatory, there is no *Apprendi* error when the court makes factual findings in support of the appropriate Guideline level. *See United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009) ("'Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict.'" (quoting *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008))). I sentenced Cunningham to 84 months' imprisonment, which is below the guideline range of imprisonment of 121 to 151 months. *See* USSG. ch. 5, pt. A; (PSR 16-17, ECF No. 362.).) Thus, the record clearly shows that I treated the Guidelines as advisory. Accordingly, Cunningham has failed to show any court error under *Apprendi,* and this claim will be dismissed.

III.

For the foregoing reasons, I grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence. A separate Final Order will be entered herewith.

          DATED: November 2, 2015

          /s/ James P. Jones
          United States District Judge